UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA HARRELL

        Plaintiff,

  v.

DELAWARE NORTH COMPANIES and
SPORTSERVICE FOOD SERVICE, INC.,

        Defendants.

Case No. 11-15557
Honorable Julian Abele Cook, Jr.

ORDER

This case involves a complaint by the Plaintiff, Linda Harrell, who has accused the two Defendants, Delaware North Companies and Sportservice Food Service, of gender and sexual harassment, gender and sexual discrimination, and retaliation in violation of various federal and state laws.

I.

The essence of this lawsuit is based on the alleged misconduct by some of Harrell's male fellow workers whom she contends began to voice numerous unwanted gender based comments toward her during the month of March in 2007. Although Harrell claims to have expressed her displeasure about the continuation of this inappropriate commentary to them, she maintains that this "hostile environment" was never ameliorated by the Defendants and, in fact, deteriorated into acts of retaliation as well as the termination of her employment during the spring of 2010. Her initiation

1

of a complaint with the Equal Employment Opportunity Commission ("EEOC"), and the commencement of this lawsuit followed.[1]

The Court has now been presented with a motion for summary judgment by the Defendants, both of whom contend that Harrell was not - and is not - their employee. In fact, they maintain that Harrell has never been employed by either of them at any time. Their collective and respective positions have been advanced by formal requests by them for the entry of a summary judgment which are opposed by Harrell

II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a motion for the entry of a summary judgment, a court "must view the facts and all inferences to

---

[1] Although the thrust of Harrell's complaint was registered against the Delaware North Companies, it was Detroit Sportservice that responded to the charge. In September of 2011, the EEOC closed its investigation and sent Harrell a "right to sue" letter.

be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate only if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Accordingly, the moving party has the initial obligation of identifying those portions of the record that will demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party has the obligation to "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III.

Harrell has asserted claims under (1) Title VII of the Civil Rights Act ("Title VII"); (2) the Elliott-Larsen Civil Rights Act ("ELCRA"); and (3) the Fair Labor Standards Act ("FLSA"). The Court will address each in turn.

### A.

Title VII of the Civil Rights Act prohibits discrimination by employers on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. This statute defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . .and any agent of such a person." 42 U.S.C. § 2000e (b). The Sixth Circuit has noted that, like its sister circuits, it "has not comprehensively explained the legal theories by which to identify 'employers' under the Civil Rights Acts." *Satterfield v. Tennessee*, 295 F.3d 611, 617 (6th Cir. 2002). Instead, there are three lines of cases that set forth those theories of establishing as to whether an entity is an "employer" under Title VII.  The Defendants have maintained that Harrell has not shown - and cannot establish - that Harrell was their employee at any of the times that are relevant to this action.

The first theory considers the "entire relationship, with the most important factor being the employer's ability to control job performance and employment opportunities of the aggrieved individual." *Id*. (internal quotation marks and citations omitted). The second theory holds that "an agent of an employer may be identified as an employer for the purposes of the Civil Rights Act if [it] delegated employment decisions to the agent." *Id.* (internal quotation marks and citations omitted). The third theory finds that "Title VII does not require a formal employment relationship between the plaintiff and the defendant. Rather, a plaintiff is protected if the defendant is one who significantly affects access of any individual to employment opportunities." *Id*. (internal quotation marks and citations omitted).Although these three theories appear to be facially distinct, the Sixth Circuit has noted that "the first theory consolidate[s] all three theories under the 'control' concept." *Id*. The parties do not dispute that the Court should consider the entire relationship between an employee and the employer as defined by *Satterfield*.

In support of the Defendants' position that Harrell was never an employee during any of the times that are relevant to this controversy, they have proffered the affidavit of Douglas Gardner, (Gardner Aff., ECF No. 12-2) who identified himself as the human resources manager for "Detroit Sportservice, Inc." In his affidavit, Gardner avers that Harrell "was employed by Detroit Sportservice, a wholly owned subsidiary of Sportservice Food Service Inc." (Gardner Aff. ¶ 3). His affidavit also includes an assertion that Harrell was never an employee of Delaware North Companies or of Food Service, never performed any work on behalf of either of these entities, and was never paid any salary or other benefits by either of these entities. Gardner's affidavit also adds that the Defendants had zero control over Harrell's employment at "Detroit Sportservice."

In support of her position that was she was employed by the Defendants, Harrell has produced a number of documents that bear the "Delaware North Companies" and "Sportservice" names and logos, including her employment application to "Delaware North Companies Incorporated." (ECF No. 8-2). However, it must be noted that (1) the application for employment was for the "Delaware North Companies, Incorporated and its subsidiaries," and (2) many of the other documents that were proffered by Harrell suggest that her employment was with the Delaware North Companies or one of its affiliates or subsidiaries (ECF No. 8-3, 8-4, 8-12). Indeed, some of these documents even indicate that she worked at "Detroit Baseball" or "Detroit Sportservice" (ECF No. 8-5, 8-7, 8-8, 8-18, 8-24, 8-26).

In submitting these documents, which include an authorization for direct deposit of employee pay, compliance certificates, a new hire form, an interoffice memorandum regarding bonuses, a pay stub, a wage notification form, and a record of associate counseling, Harrell argues that these exhibits clearly reflect the Defendants' extensive control over every aspect of her employment. The

5

Defendants counter with an assertion that these challenged documents confirm a relationship between Detroit Sportservice and Delaware North, but fail to create an employer-employee relationship between Harrell and the Defendants in this action.

In addressing this issue in 1983, the Sixth Circuit opined that there must be some "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the act of the immediate employer." *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir. 1983) *overruled on other ground by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). A typical relationship between a parent corporation and its subsidiary is generally insufficient to make the former entity responsible for the latter's Title VII violations. *Id*. Only in certain circumstances - such as when there is a significant interrelationship between the parent and a subsidiary, will responsibility for the subsidiary's activity be extended to the parent. *Id*. at 1337-38.

The Sixth Circuit has advanced two tests to determine whether an extension of responsibility from the subsidiary to the parent company should occur; to wit, the "integrated enterprise" test and the "joint employer" test. The Court will address each seriatim.

The Sixth Circuit has stated that:

> under the 'single employer' or 'integrated enterprise' doctrine, two companies may be considered so interrelated that they constitute a single employer subject to liability . . . In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. None of these factors is conclusive, and all four need not be met in every case. Nevertheless, control over labor relations is a central concern. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993-94 (6th Cir. 1997). (Internal citations and quotations omitted.)

A review of the current record reveals that none of the parties has provided the Court with a sufficiency of facts that are necessary to perform this analysis. Whereas Harrell submits that these exhibits clearly demonstrate that she was employed by the Defendants, the Defendants disagree. It is their collective view that these exhibits show that Delaware North provided its subsidiary, Detroit Sportservice, with a variety of administrative services. These perfunctory statements leave open a question of a material fact regarding the degree of integration between the entities.

Further, some of these proffered documents create a genuine issue of a material fact regarding the identity of the entity which controlled Harrell's employment opportunities. In particular, the Record of Associate Counseling, which is on a "Sportservice - A Delaware North Company" letterhead (ECF No. 8-26), states that she worked at the "Detroit Baseball Unit/Department." Although the document is signed by two individuals (a manager and a representative from human resources), the identities and the employer of the persons whose signatures appear thereon is unclear. However, the document states that "[i]f your performance deteriorates, or continues at its current level, I may take further corrective action, up to and including termination of employment." This document clearly demonstrates some definitive control over Harrell's employment opportunities. While this statement appears on "Sportservice- A Delaware North Company" letterhead, neither party has identified the signatories or their respective roles. Therefore, the Court cannot determine - without more - whether the Defendants were Harrell's employer or if either of them can be held accountable for the subsidiaries' actions under the "integrated enterprise" test.

> The "joint employer" test examines whether:
>
> one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of

> employment of the employees who are employed by the other employer. Thus, the 'joint employer' concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment. *Swallows*, 128 F.3d at 993 (citation omitted).

For the same reasons that have been noted above, the Court lacks a factual basis upon which to make this determination

B.

In her complaint, Harrell asserts a violation of the Elliot Larson Civil Rights Act ("ELCRA") which defines an "employer" as "a person who has 1 or more employees, and includes an agent of that person." Mich. Comp. Laws § 37.2201. Based on the language within this statute, a "person" includes a corporation. Mich. Comp. Laws § 37.2103. In determining whether a plaintiff is an employee under ELCRA, courts in Michigan apply the "economic reality" test. *Falls v. The Sporting News Publishing Co.*, 834 F.2d 611, 614 (6th Cir. 1987). This evaluation requires a court to review an employment relationship as a whole in relation to the statutory scheme as contemplated by ELCRA. *Id*. The control over a worker's duties, payment of wages, authority to hire and fire, and responsibility for the maintenance of discipline are all factors to be considered, but none are thought to be controlling. *Id*.

Although the Gardner affidavit states that Harrell had never been hired or paid by the Defendants, there remains a genuine issue of a material fact regarding the extent of the control, if any, over her employment. Furthermore, there are numerous instances wherein exhibits indicate that the Delaware North Companies was involved in the administration of Harrell's benefits. (ECF No. 8-14, 8-17, 8-18, 8-20). Therefore, the Court is unable to make

a determination regarding the liability, if any, of the Defendants under ELCRA as to whether the Harrell was employed by the Defendants.

C.

Finally, Harrell accuses the Defendants with violations under the Fair Labor Standards Act ("FLSA"). The Equal Pay Act provisions within the FLSA forbid gender-based wage discrimination by "any employer having employees subject to any provisions of this section." 29 U.S.C. § 206(d)(1). Section 3(d) of the FLSA states that an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

In 1981, the Sixth Circuit declared that "in deciding whether a party is an employer [under the FLSA], economic reality controls rather than common law concepts of agency." *Dole v. Elliott Travel & Tours*, 942 F.2d 962, 965 (6th Cir. 1991). As demonstrated above, the Court is unable to render a determination on this point given the paucity of the factual record.

IV.

For the reasons that have been stated above, the Defendants' joint motion for summary judgment is denied. (ECF 4).

IT IS SO ORDERED.

Date: October 3, 2012                     s/Julian Abele Cook, Jr.
                                          JULIAN ABELE COOK, JR.
                                          U.S. District Judge

9

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 3, 2012.

                                              s/ Kay Doaks
                                              Case Manager